# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

JOHNNY THOMPSON, JR.              *      CIVIL ACTION NO. 18-1473

vs.                                               *      JUDGE TERRY A. DOUGHTY

JERRY GOODWIN                     *      MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Pro se Petitioner Johnny Thompson Jr., an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 9, 2018. [doc. # 1]. Thompson attacks his 2014 felony theft conviction and the resulting 36-year sentence imposed by Louisiana's 4th Judicial District Court, Morehouse Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On the morning of October 3, 2013, Tammy Fatheree, the manager of the Family Dollar store in Bastrop, Louisiana, followed her normal procedure for opening the store. She counted the petty cash, put the tills in the registers, and moved certain items from the store out onto the sidewalk. Fatheree counted $900 in petty cash, including $715 in bills and the remainder in coins. She placed the bills in a bag and put the bag and coins in the bottom of a safe located at the front of the store. Contrary to store policy, Fatheree did not close the safe door because if she needed access to petty cash to make change she would have to wait five minutes for the safe to open if it was locked. Fatheree opened the store at 9:00 a.m. and began stocking groceries at the back of the store.

About 20 minutes later, Fatheree heard a clicking sound which she perceived to be the safe door closing. She immediately returned to the front of the store and saw that the safe had been closed. She entered the code to the safe and waited five minutes until the safe opened. The bag containing $715 was missing. She called the assistant store manager and asked her to come to the store to view the surveillance videotapes while she watched over the store. Fatheree also viewed the surveillance videotapes and saw an African–American male wearing a white shirt with the words "Fast Tax" on the front, retrieve something from the safe. Fatheree called the police, who responded to the store.

Sergeant Marvin Holmes, of the Bastrop Police Department, who assisted with the investigation of the theft, viewed the surveillance videotapes and recognized the defendant, Johnny Thompson, Jr., as the man taking the money from the safe. Thompson was subsequently charged with the felony theft of the cash from the Family Dollar store. The state offered Thompson a plea deal whereby it would agree to dismiss other pending charges (including forgery and domestic abuse) in exchange for his guilty plea for felony theft with a five-year hard labor sentence, and the state would not file an habitual offender bill. The prosecutor noted that if Thompson rejected the plea offer and was convicted, it would file an habitual offender bill.

Thompson rejected the offer in open court, and trial proceeded.
 . . . .
Following the defendant's testimony, the trial court found him guilty of theft in the amount of $715 and ordered a presentence investigation report (PSI).

Subsequently, the state filed an habitual offender bill of information charging the defendant as a fourth or subsequent felony offender.

*State v. Thompson*, 50,392 (La. App. 2 Cir. 2/24/16), 189 So. 3d 1139, 1140–41. On March 27, 2015, the court conducted a habitual offender hearing, and the State presented evidence that Thompson had previously been convicted of seven felonies. On April 2, 2015, the trial court sentenced Thompson to 36 years at hard labor without the benefit of probation or suspension of sentence. *Id.* at 1142.

Thompson filed a direct appeal in the Second Circuit Court of Appeal, arguing that there was insufficient evidence to sustain his conviction and his sentence was excessive. On February

24, 2016, the Second Circuit affirmed Thompson's conviction and sentence. *Id.* at 1147. On March 31, 2017, the Louisiana Supreme Court denied Thompson's subsequent application for writ of certiorari and/or review. *State v. Thompson*, 2016-0535 (La. 3/31/17), 217 So. 3d 358. Thompson did not file a petition for certiorari in the United States Supreme Court. [doc. # 1 ¶ 9(h)].

On December 7, 2017, Thompson filed an application for post-conviction relief in the state district court arguing: (1) his trial counsel was ineffective for failing to (a) investigate the accusations against Thompson; (b) question any witnesses in the matter; (c) review the police reports; (d) inform Thompson of a possible plea agreement; (e) retain Thompson's right to a jury trial; and (f) file a motion for reconsideration of sentence; and (2) his conviction was obtained in violation of the Fourteenth Amendment to the United States Constitution because Thompson did not waive his right to a jury trial. (R. at 387–92).[1] The district court denied his application on January 30, 2018. (*Id.* at 424–25). The Second Circuit Court of Appeal denied his application on May 31, 2018. (*Id.* at 426–27). Thompson sought a supervisory and/or remedial writ, which the Louisiana Supreme Court denied on August 3, 2018. *State ex rel. Thompson v. State*, 2017-0600 (La. 8/3/18), 248 So. 3d 1289.

On November 9, 2018, Thompson filed the instant federal habeas corpus petition raising the same claims that he raised in his state court application for post-conviction relief. (*See* Mem., [doc. # 1-2]). The State filed its response on March 1, 2019. (Opp. Mem., [doc. # 10]). Thompson filed a reply on March 14, 2019. (Reply. Mem., [doc. # 11]). This matter is ripe.

---

[1] The State submitted over 400 pages of the state court record. [*See* docs. 10-1–10-7]. References to the record are cited as "R. at [page #], with the page number corresponding to the number inserted by the State.

**Standard of Review**

Federal courts may provide habeas corpus relief of a state prisoner in accordance with 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under Section 2254(d), after a state court has adjudicated a prisoner's claims on the merits, an application for a writ of habeas corpus may be granted only if the petitioner shows that the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision is "contrary to" clearly established law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A decision involves an "unreasonable application" of clearly established law "if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id.* (citing *Williams*, 529 U.S. at 407–08). "Clearly established law" refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

Section 2254(d)(2) involves a challenge to factual determinations made by state courts. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). Federal courts presume such determinations

4

to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). An adjudication is "on the merits" when "the state court resolves the case on substantive grounds, rather than procedural grounds." *Id.* at 946–47. A federal court reviews *de novo* a claim not adjudicated on the merits in state court. *Hoffman*, 752 F.3d at 437.

## Discussion

### I.    Ineffective Assistance of Counsel

Thompson raises six allegations of ineffective assistance of counsel. To prevail on an ineffective assistance claim, a petitioner (1) "must show that counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to prove either prong defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). A court need not analyze the prongs of this test in any particular order or even address both prongs if the defendant fails to make a sufficient showing on one. *Strickland*, 466 U.S. at 697. Further, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042.

To satisfy the first prong, Thompson must prove his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In applying the first prong, federal courts presume counsel has provided competent professional assistance. *Id.* at 689–90. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's conduct on

5

the facts of the case, at the time of the conduct, keeping in mind that counsel's function "is to make the adversarial testing process work in the particular case." *Id.* at 690.

To establish prejudice under the second prong, Thompson must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This requires showing that counsel's actions "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Id.* at 687, and not merely that the outcome would have been different. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993).

A.  <u>Failure to Investigate the Accusations Against Thompson; Failure to Question Witnesses; Failure to Review Police Reports</u>

Thompson claims his trial counsel failed to (1) "investigate the accusations against Petitioner"; (2) "question or investigate any witnesses in this matter"; or (3) "review the Police Reports related to this case." (Mem. at 3). The State responds that Thompson "sets forth no substantive facts in support of these claims." (Opp. Mem. at 8). In reply, Thompson states that "he <u>never</u> had the opportunity to meet with Court Appointed Counsel" and "regardless of the State's Opposition, the <u>only</u> concern [his counsel] had, was to make sure a conviction was obtained." (Reply Mem. at 2).

The State is correct that Thompson has not provided any support for these claims; Thompson does not explain what his counsel was supposed to investigate or demonstrate that counsel failed to do so. Even if he supplied facts to support a finding that counsel's performance was deficient, he has failed to show prejudice. Thompson testified in his own defense at trial and

6

admitted to the theft. Thus, he has not demonstrated a reasonable probability that the outcome of his trial would have been different. Accordingly, these claims should be **DISMISSED**.

    B.  <u>Failure to Inform Thompson of a Plea Agreement</u>

Thompson's fourth ineffective assistance claim is that his counsel failed to explain to him the terms of the plea agreement. (Mem. at 3). The State responds:

> The record clearly rebuts this contention. The state offered the defendant a plea agreement of five (5) years at hard labor including a waiver of application of the habitual offender law. Defense counsel recommended that he take the offer and expressly requested that petitioner be advised of the terms by the trial court. The trial court restated the agreement in open court and asked Petitioner if he wished to reject the offer. Petitioner rejected the offer.

(Opp. Mem. at 9). Thompson replies that he "rejected the offer" because his counsel never explained to him the effects of his guilty plea. (Reply Mem. at 2).

In denying Thompson's application for post-conviction relief, the state district court found that Thompson "made no . . . showing" that counsel's performance was deficient and prejudiced his defense. (R. at 424). The undersigned has reviewed the record and does not find that state court's determination was unreasonable.

On September 29, 2014, Thompson appeared in state court to plead guilty to charges he faced in matters unrelated to the felony theft charge. The parties then discussed a plea offer from the State:

> DEFENSE COUNSEL:    I want Mr. Thompson . . . to plead to what we've been offered and everything else go away, but he doesn't desire to do that.
>
> PROSECUTOR:    You Honor, for the record the state's offer was that he is to plead to the felony theft that is on the trial docket and receive five years at hard labor on that matter and the state decline prosecution on all other matters, and based upon his lengthy record, we still would not file a habitual offender if he pled guilty.

7

| | If he is to reject that offer at this time, the state will file a habitual offender bill. |
|---|---|
| COURT: | Alright, so has that offer been rejected? |
| DEFENSE COUNSEL: | Yes, sir. He rejects it. |
| COURT: | Alright, so the offer has been rejected. So it's been withdrawn. Is that right . . . ? |
| PROSECUTOR: | Correct, your Honor. All offers have been withdrawn. |
| COURT: | Alright then, so your client wants to plead guilty to domestic abuse batter and violation of protective order? |
| DEFENSE COUNSEL: | Yes, sir. I would like for you to ask him, for the record, if he desires to reject that offer. |
| COURT: | Alright, Mr. Thompson, just so the record is clear, you heard what the offer was – five years and no habitual offender proceeding and everything else would be dismissed. Do you want to reject that offer? |
| THOMPSON: | Yes, Sir. |
| COURT: | Alright, so noted. |

(*Id.* at 142–43).

Following his trial and conviction, Thompson filed a pro se motion in arrest of judgment on the grounds that he did not understand the State's plea offer because the State originally agreed to dismiss his felony theft case if he pleaded guilty to a forgery charge. (*Id.* at 38–39). The court held a hearing on December 9, 2014, and the following colloquy occurred:

| PROSECUTOR: | . . . I remembered that on the morning of the trial the Court discussed with him the plea offer. His attorney discussed it with him and you verified with him that he did not want to take a plea offer which was five years on that one count and we declined all the other charges he had. Based upon that, the state actually received a transcript of the proceeding to rebut that allegation and his motion of arrest. |
|---|---|
| . . . . | |
| DEFENSE COUNSEL: | . . . [T]he only thing I could add is that I had previously indicated to Mr. Thompson that I had come to an agreement with his approval that it would be five years hard labor on forgery. |

8

|  | Everything else would go away. On the day of the trial that was changed from forgery to theft but I explained to him that it still had the same affect [sic]. Five years hard labor, everything else goes away. He explains to me that he thought that the forgery was on top – theft was on top of the forgery and you know I'm going to allow the Court to read it for himself, no need for me to paraphrase, but that was the question that was raised by the court and questions and answers were made and I'll just request – |
|---|---|
| COURT: | Alright, very well. Mr. Thompson you wanted to say something? . . . So what do you want me to know? |

(*Id.* at 209–12).

Thompson then explained that his counsel initially told him the state came up with a deal for the forgery. Thompson would take "five years for the forgery," and the other charges, including the felony theft charge, would "just disappear. (*Id.* at 212). Thompson told his counsel he would take the deal but requested to go home to take care of a few things before he started his sentence. His counsel indicated that he would speak with the prosecutor but on the day of trial told Thompson this was not possible. (*Id.*) Thompson still agreed to take the deal. However, his counsel then informed him that it would be five years for the felony theft. Accordingly to Thompson, he did not understand this deal, and his counsel did not explain that if he took "the deal for five years for the felony theft everything else would disappear." (*Id.* at 213). Otherwise he would have taken the deal, "because it still would have been the same." (*Id.*)

The court then reviewed a transcript of the September 29, 2014 hearing, which clearly stated Thompson would get five years for felony theft and everything else would go away. (*Id.* at 213). The court also noted that it asked Thompson directly if he heard the offer and wanted to

9

reject it, and Thompson answered yes. (*Id.* at 214). However, Thompson maintained that he did

not understand the offer:

| | |
|---|---|
| THOMPSON: | But you Honor, I didn't understand that point. |
| COURT: | What don't you understand about that point? |
| THOMPSON: | I didn't understand that all other matters would be disappeared. |
| COURT: | Well, when it says everything else will be dismissed, what don't you understand about that? |
| THOMPSON: | I mean it wasn't said to me. |
| COURT: | It was definitely – it was said by you twice. Once by the DA and then I made sure of it so I asked you directly myself. So, the record is clear you heard what the offer was; five years and no habitual offender proceeding and everything else would be dismisses [sic]? Do you want to reject that offer? Your response was, yes sir. |
| THOMPSON: | I didn't understand that part your Honor because I would have took that deal because it would have been the same as the deal was already offered to me except it would have been a different charge. |
| . . . . | |
| COURT: | Well no, you weren't willing to take it Mr. Thompson because you were asked directly. First the DA stated it, through your attorney you said you rejected it then I addressed you directly to make sure that was the case and you said yes, I reject that offer. |

(*Id.* at 214–15). The court subsequently found that the record clearly established that Thompson

was aware of the offer and rejected it. (*Id.* at 215).

Thompson raised this issue again at hearing on March 27, 2015, and the court treated his

claim as a motion to reconsider. His counsel stated for the record that he spoke with Thompson

and indicated Thompson would get five years and all other charges would go away. He also

noted that it made no difference what felony charge Thompson pleaded guilty to. The court again

read out loud the transcript from the September 29, 2014 hearing and found Thompson clearly rejected the plea offer. (*Id.* at 226–36).

Thompson has provided no support for his claim that his counsel failed to explain to him the terms of the plea offer. He admits that he was aware the State offered him a five-year sentence in exchange for pleading guilty to one felony charge but maintains he did not understand that all other charges would be dismissed once the State changed the felony from the forgery to the theft. However, his counsel stated that he explained the new offer to Thompson. Further, the plea offer was read out loud in court, and Thompson expressly rejected it. Therefore, this ineffective assistance of counsel claim is without merit and should be **DISMISSED**.

C.  <u>Failure to Retain Thompson's Right to a Jury Trial</u>

Thompson next claims his counsel "misled the District Court into believing that [he] <u>waived</u> his right to jury trial." (Mem. at 3). He notes that during a pretrial hearing, the prosecution informed the court that there would be a bench trial, and his counsel stated "defendant is waiving a jury trial." (*Id.* at 4–5). However, he claims he intended to waive his jury trial only in an unrelated case and "**<u>never</u>** requested to waive his jury trial" in this matter. (*Id.* at 5). He claims he tried to tell his counsel he was not waiving his right to a jury trial, but his counsel told him to "please be quiet." (*Id.*) He also claims he could not have raised this issue on appeal because he never had the opportunity to address his appeal with appellate counsel. (*Id.* at 6).

The State responds that the record shows Thompson waived his right to a jury trial. (Opp. Mem. at 9). Further, the State claims Thompson is procedurally barred from making this claim because he did not raise it on appeal or prior application. (*Id.*)

11

Thompson replies that his counsel "presented to the Court a jury trial waiver that had absolutely nothing to do with the case in front of the Judge," which was a "blatant and disrespectful violation of [his] Constitutional Right to effective assistance of counsel." (Reply Mem. at 2).

As described below, *infra* Part II, Thompson has not shown that his jury trial waiver was not made knowingly, intelligently, or voluntarily. Rather, as the state district court determined in its denial of Thompson's application for post-conviction relief, (1) Thompson made no showing that counsel's performance was deficient and prejudiced his defense; and (2) the record contradicts Thompson's claim that he did not waive his right to a jury trial. (R. at 424–25). Given the knowing and intelligent waiver, Thompson has failed to demonstrate he was prejudiced by his counsel's actions. Accordingly, this claim should be **DISMISSED**.

D. <u>Failure to File Motion for Reconsideration of Sentence</u>

Thompson's final ineffective assistance claim is that his counsel was ineffective for failing "to file a Motion for Reconsideration of Sentence, due to the fact that a 36-years [sic] sentence to a non-violent defendant violates the Constitution." (Mem. at 3).

The State responds that "Petitioner was sentenced under Louisiana's Habitual Offender Law. Under this statute, as a fourth or subsequent offender, Petitioner faced a range of punishment of not less than twenty (20) years to life imprisonment, without benefit of probation or suspension of sentence." (Reply Mem. at 9–10). The State urges this Court to defer to the state court's finding that his sentence was not constitutionally excessive. (*Id.* at 10).

Under Louisiana's Habitual Offender Law, La. R.S. § 15:529.1, a trial court is required to impose a mandatory minimum sentence if the State produces evidence that a defendant has been

12

convicted of a second or subsequent offense. However, the court has a duty to reduce the mandated sentence if it "makes no measurable contribution to acceptable goals of punishment" or amounts "to nothing more than the purposeful imposition of pain and suffering **and** is grossly out of proportion to the severity of the crime." *Quinn v. Theriot*, No. 15-CV-1229, 2016 WL 8730582, at *12 (W.D. La. Sept. 20, 2016) (citations omitted). Departures should be made only "in rare situations." *Id.*

Here, Thompson was convicted of one count of felony theft and subsequently found to be a fourth felony offender and faced a sentence range of twenty years to life. *See* La. R.S. 15:529.1(A)(4)(a). The court ultimately sentenced him to 36 years at hard labor after finding a "lesser sentence would depreciate the seriousness of [his] crime." (R. at 281–82; *see* "Sentencing Hearing," *id.* at 269–83). Thompson argued his sentence was excessive on direct appeal, and the Second Circuit rejected this claim, finding:

> Nor is the defendant's sentence excessive. The trial court considered the defendant's PSI, letters submitted on his behalf and the sentencing factors in La. C. Cr. P. art. 894.1. It explained that while the defendant appeared to have a substance abuse problem and is responsible for the care of several family members, he also has a significant criminal history including eight felony convictions (one for second degree battery) and 46 arrests. Accordingly, the trial court determined that he would likely commit another crime if given a probated sentence, and a lesser sentence would deprecate the seriousness of his crime. While the defendant's sentence amounts to a life sentence for him due to his age, the trial court was required to impose a sentence of at least 20 years, and up to a mandatory life sentence. Given the defendant's extensive criminal history, the defendant has not shown that he "is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."

*Thompson*, 189 So. 3d at 1146–47.

The undersigned agrees that Thompson's sentence is within the range prescribed by Louisiana law and is not constitutionally excessive. Further, in his Petition, Thompson does not

allege any factors that would support a reduced sentence. Additionally, he filed a pro se motion for reconsideration of his sentence, which the court denied. (R. at 96–101). Thus, even if his counsel should have filed the motion for reconsideration, Thompson has failed to demonstrate a reasonable probability of a different result. Since he cannot show prejudice, he has not shown ineffective assistance of counsel. Accordingly, this claim should be **DISMISSED**.

## II.     Waiver of Jury Trial

### A. Claim

Thompson claims he did not waive his right to a jury trial, and "the actions of the District Court, together with the misrepresentations of the Prosecution and the cooperation of" his counsel violated his right to due process under the Fourteenth Amendment. (Mem. at 4–6). His support for this claim is the same as that for his ineffective assistance of counsel claim. *See id.*; *supra* Part I.C.

The State replies that it has shown "the waiver was made on the record" and "by written motion and order." (Opp. Mem. at 10). Further, "this issue was fully presented to the state courts and this Court should defer under the applicable law." (*Id.*)

Thompson replies that the "argument presented by the State is completely wrong; the only waiver presented to the District Court . . . is a waiver under Docket No. 13-200F (Forgery); Petitioner was in front of the Court under Docket No. 2013-958F, the matter now in front of this Court." (Reply Mem. at 3).

### B. Adjudication "On The Merits"

This Court must first determine whether this claim was adjudicated on the merits in state court and therefore, entitled to deference. It does so by "'look[ing] through' to the last clear state

14

decision on the matter." *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (citations omitted). The last clear state court decision on this matter was the state district court's denial of Thompson's application for post-conviction relief as follows:

> Defendant also claims he did not waive his right to a jury trial. The record clearly contradicts this claim. Additionally, Defendant appealed his conviction and sentence, and this claim should have been raised on appeal. A defendant is procedurally barred from raising a claim on post-conviction relief if he could have done so on appeal or in prior applications. *State v. Gains*, 1997-1327 (La. App. 4 Cir., 1997) 701 So.2d 688.

(R. at 424–25).[2]

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This presumption applies even if the "state court's decision is unaccompanied by an explanation." *Id.* Here, the state court denied Thompson relief based on the "record" and because he failed to raise this claim on direct appeal, suggesting both substantive and procedural grounds for the denial. "When a state court rules alternatively on both procedural grounds and on the merits of a prisoner's claims, the AEDPA deference is still applicable." *Woodfox*, 609 F.3d at 795 n.7; *Busby v. Dretke*, 359 F.3d 708, 721 n.14 (5th Cir. 2004) ("That the state habeas court also invoked a procedural bar as an alternative basis to deny relief does not deprive the state of the benefit of AEDPA's deferential standard.").

Thus, under section 2254(d)(1), this court must affirm the denial of Thompson's habeas petition unless the state court's decision was contrary to or involved an unreasonable application

---

[2] The Louisiana Supreme Court issued a one-word denial of his application, 248 So. 3d 1289, and the Second Circuit denied his writ "[o]n the showing made," (R. at 427).

of clearly established law. "Because no Supreme Court case involves facts nearly identical to those before [this Court], [Thompson's] appeal is governed by the 'unreasonable application' prong of AEDPA." *Pierre v. Leger*, 495 F. App'x 403, 408 (5th Cir. 2012) (citations omitted). Under section 2254(d)(2), Thompson must show the state court decision "was based on the unreasonable determination that [he] consented to the waiver in light of the state court record." *Id.* at 409.

    C. Law and Analysis

    The Sixth Amendment guarantees criminal defendants the right to a jury trial for serious offenses. U.S. Const. amend. VI; *see Duncan v. Louisiana*, 391 U.S. 145, 156–58 (1968) (noting that the Sixth Amendment right to a jury trial applies to the states through the Fourteenth Amendment). A defendant may waive this right, provided he does so knowingly, intelligently, and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Whether a defendant effectively waived his right to a jury trial depends on "the unique circumstances of each case." *Pierre*, 495 F. App'x at 406 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942)). A defendant may waive this right through counsel, as long as the waiver is knowing and intelligent. *Id.* at 409. A court cannot presume waiver from a silent record. *Id.* at 406 (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).

    Here, the record is not silent but reflects that on December 31, 2013, Thompson, through his counsel, filed a "Motion for Judge Trial," requesting the court find he knowingly and intelligently waives his right to a jury trial and elects a trial by judge in docket no. 13-200F, a

forgery charge. (R. at 32). During a hearing in Thompson's felony theft case, docket no. 2013-958F, defense counsel noted Thompson was present and elected to have a bench trial, and the court scheduled a preliminary hearing for March 6, 2014. (*Id.* at 116–17). The following colloquy occurred during the March 6th hearing:

| | |
|---|---|
| PROSECUTOR: | I wanted to ask -- he filed a waiver of jury trial? |
| DEFENSE COUNSEL: | Yes, he did. |
| PROSECUTOR: | Okay. I believe he only filed that relative to one case and not both. Does he wish to waive jury in both matters? |
| DEFENSE COUNSEL: | Do you wish to waive jury in both matters? |
| PROSECUTOR: | I don't believe he filed a motion to waive jury trial in the felony theft. He waived it only in the forgery? |
| DEFENSE COUNSEL: | Yes, and if I can I'm going to change that? |
| PROSECUTOR: | He wants to waive in both? |
| DEFENSE COUNSEL: | Waive both and I didn't look in the record your Honor -- I don't know if a copy of what I filed is in there -- |
| COURT: | I think there's a requirement for a written waiver. I don't think you can do it orally. |
| PROSECUTOR: | That's true and he timely filed it. If you want to extend it to both cases is what I want to know? |
| DEFENSE COUNSEL: | Yes. |
| PROSECUTOR: | Okay. |
| DEFENSE COUNSEL: | And what I wanted to do was go ahead and -- if it's not in there I was going to use my copy for the Court to sign. I know the Court made a ruling the other day but I have a -- |
| PROSECUTOR: | No objection. We'll set all matters for trial -- if he wants to effect the waiver we'll set this matter for trial on June 16th. |
| . . . . | |
| COURT: | Do we have a written waiver? Okay, thank you. |

(*Id.* at 134–36).

Handwritten in the caption of Thompson's motion is "No 13-958F," the docket number for the felony theft charge. (*Id.* at 32). Following the hearing, the court signed an order finding

17

that Thompson "knowingly and intelligently waives trial by jury and elects trial by Judge." (*Id.*

at 34).

In his motion in arrest of judgment, Thompson claimed he was denied his right to a jury

trial in violation of La. Code Crim. Proc. arts. 851(B)(2), (4) and 859(2), (5). (*Id.* at 38–39). At

the December 9, 2014 hearing, the parties discussed the motion as follows:

| | |
|---|---|
| PROSECUTOR: | Your Honor, the next issue appears to be in paragraph two; the allegation that he was never given the opportunity to have a jury trial. |
| COURT: | And my understanding was we talked about that. This has not been transcribed but I do have a memory of this Court but I think . . . prior to my coming into this section it was Judge Winters who was presiding over this matter and he went through a very detailed articulation of his right to a trial. Is that correct . . .? |
| PROSECUTOR: | I do recall that and also your Honor, for the record, just immediately prior to trial, your Honor spoke with him. There is not a transcription of that and there's also a written motion by his attorney indicating that he wishes to waive his jury trial right. But it was discussed with Mr. Thompson personally, just prior to trial. |
| COURT: | And the record reflects that? |
| PROSECUTOR: | The audio was clear. |
| COURT: | And just if you would, summarize what the audio said for the record. |
| PROSECUTOR: | It starts off with the state asking the Court also to take notice that he had waived his jury trial right and at that point you Honor asked him, and indicated that you do understand that you previously waived your right to a jury trial, do you still wish to maintain that? He indicated he did. |
| COURT: | Alright, I do see -- there's a written motion on case numbers 13 -- what is the theft mater -- it's case number what? |
| PROSECUTOR: | 13-958F. |
| COURT: | Alright so there's 13-200F and 13-958F -- there was a written request to waive a jury that was made on March -- well it was filed March 6, 2014 and the |

certificate was signed on 31st day of December. In any event, it was done in writing and then this Court then confirmed that in fact was your intent on the day of the trial itself.

(*Id.* at 215–17). The court then denied Thompson's motion. (*Id.* at 217)

On review, the undersigned finds that Thompson is not entitled to habeas corpus relief on this claim.

First, Thompson has failed to show that the state court's determination that he consented to the waiver was unreasonable in light of the state court record. The transcript of the March 6, 2014 hearing reflects that defense counsel, at the time of trial and in Thompson's presence, informed the court that Thompson wished to waive his right to a jury trial. The court then had defense counsel ensure the waiver was in writing, and defense counsel added the docket number in this matter to a prior jury waiver motion. (*Id.* at 134–36). Thompson now claims he tried to inform defense counsel he was not waiving a jury trial, but at no point did Thompson object to the bench trial. Further, the record reflects that the court spoke with Thompson just prior to trial, and Thompson indicated he still wished to waive his right to a jury trial. Though not transcribed, both the prosecutor and the court recalled this conversation. (*Id.* at 215–17). Based on the record, the state court could have reasonably determined Thompson waived his right to a jury trial.

Second, Thompson has not demonstrated that the state court applied Supreme Court precedent to the facts of this case in an objectively unreasonable manner. *See Brown*, 544 U.S. at 141. Neither the Fifth Circuit nor the Supreme Court has defined "fact-specific constitutional minima for a valid jury waiver" or "required a set colloquy before a jury waiver can be accepted." *Pierre*, 495 F. App'x at 410–11. Nonetheless, a waiver must be knowing and intelligent to be valid. Here, Thompson has failed to show his waiver was not knowing and

19

intelligent. Though he waived his right through defense counsel, there is no indication Thompson did not understand the waiver. Further, the record reflects Thompson personally reaffirmed the waiver before the court just prior to trial. (R. at 215–17).

The question before this Court is not whether the state court's application of clearly established federal law was incorrect, but whether that application was objectively unreasonable. *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005). Here, the state court determined that the record contradicted Thompson's claim that he did not waive his right to a jury trial. Thompson has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. §2254(e)(1). Thus, in light of the record, the state court's decision was not an objectively unreasonable application of clearly established federal law.

Accordingly, this claim should be **DISMISSED**.

## Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that the petition for habeas corpus filed by Petitioner Johnny Thompson, Jr. [doc. # 1] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 29th day of March 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE